IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| HARRIS METHODIST, FT. WORTH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| SALES SUPPORT SERVICES, INC. | § | |
| EMPLOYEE HEALTH CARE PLAN and | § | |
| SALES SUPPORT SERVICES, INC., | § | |
| | § | CIVIL ACTION NO. |
| Defendants/Third-Party Plaintiffs, | § | 4:01-CV-0567-Y |
| | § | |
| V. | § | |
| | § | |
| TRANSAMERICA LIFE INSURANCE | § | |
| AND ANNUITY COMPANY, | § | |
| STANDARD SECURITY LIFE INSURANCE | § | |
| COMPANY OF NEW YORK and | § | |
| BERKLEY RISK MANAGERS, | § | |
| | § | |
| Third-Party Defendants. | § | |

**THIRD-PARTY DEFENDANT BERKLEY RISK MANAGERS'**
**RENEWED SUMMARY JUDGMENT REPLY**

Robert M. Candee
State Bar No. 0738500
Dean J. Siotos
State Bar No. 0793018

HENSLEE, FOWLER, HEPWORTH
& SCHWARTZ, L.L.P.
6688 North Central Expressway, Suite 850
Dallas, Texas 75206-3913
(214) 219-8833
(214) 219-8866 (Fax)

ATTORNEYS FOR THIRD-PARTY
DEFENDANT BERKLEY RISK MANAGERS

## TABLE OF CONTENTS

I.  BACKGROUND .................................................................................................1

II.  ARGUMENTS AND AUTHORITIES.............................................................3

    A.  No Standing To Pursue Claims................................................................3

    B.  No Breach of Duty....................................................................................4

    C.  No Breach of Fiduciary Duty...................................................................6

    D.  No Viable Negligence Claims .................................................................9

    E.  No Viable Tolling Contention ...............................................................10

    F.  Contractual Indemnity ...........................................................................11

    G.  Berkley's Contractual Indemnity...........................................................12

III.  CONCLUSION AND PRAYER ....................................................................13

# TABLE OF AUTHORITIES

## CASES

*Gutierrez v. Deloitte & Touche,*
100 S.W.3d 261 (Tex.App. – San Antonio 2002)...............................................................8

*Happy Industrial Corporation v. American Specialties, Inc.,*
983 S.W.2d 844 (Tex.App. – Corpus Christi 1998) ...........................................................8

*Hooks v. Carpeton Mills, Inc.,*
2005 WL 352650 *4 (Tex.App. – Fort Worth, December 22, 2005, app. dism'd) ...........13

*Nuwer v. Marine Post-Acute Network,*
2003 WL 21213366*4) (5th Cir., Op. No. 00-60299, May 27, 2003)..................................3

*Placid Oil Co. v. Professional Geophysics, Inc.,*
932 F.2d 394 (5th Cir. 1991) ...........................................................................................10

*Schafer v. Arkansas Medical Society,*
853 F.2d 1487 (8th Cir. 1988) .........................................................................................11

*S.V. v. R.V.,*
933 S.W.2d 1 (Tex. 1996)................................................................................................10

*Townsend v. University Hospital – University of Colorado,*
83 S.W.3d 913, (Tex.App. – Texarkana 2002)...................................................................8

*Weaver v. Witt,*
561 S.W.2d 792 (Tex. 1977)............................................................................................10

## STATUTES AND RULES

Fed. R. Civ. P. 7(a) .........................................................................................................12

Fed R. Civ. P. 8(d) ..........................................................................................................12

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| HARRIS METHODIST, FT. WORTH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| SALES SUPPORT SERVICES, INC. | § | |
| EMPLOYEE HEALTH CARE PLAN and | § | |
| SALES SUPPORT SERVICES, INC., | § | |
| | § | CIVIL ACTION NO. |
| Defendants/Third-Party Plaintiffs, | § | 4:01-CV-0567-Y |
| | § | |
| V. | § | |
| | § | |
| TRANSAMERICA LIFE INSURANCE | § | |
| AND ANNUITY COMPANY, | § | |
| STANDARD SECURITY LIFE INSURANCE | § | |
| COMPANY OF NEW YORK and | § | |
| BERKLEY RISK MANAGERS, | § | |
| | § | |
| Third-Party Defendants. | § | |

**THIRD-PARTY DEFENDANT BERKLEY RISK MANAGERS'
RENEWED SUMMARY JUDGMENT REPLY**

Pursuant to Rule 56, Fed. R. Civ. P., Third-Party Defendant Berkley Risk Managers ("Berkley") files this Renewed Summary Judgment Reply.

**I.
BACKGROUND**

On January 31, 2006, Berkley filed a Renewed Motion for Summary Judgment ("Renewed Motion")[1] and accompanying Brief ("Renewed Brief").[2] The Renewed Motion and Renewed Brief were based upon the factual information contained in Berkley's previously filed

---

[1] Docket No. 181.

[2] Docket No. 182.

Page 1

Appendix ("Appendix"),[3] Berkley's previously filed Supplemental Appendix ("Supp. App."),[4] and the Excess-Loss Insurers' previously filed Appendix ("Insurers' Appendix").[5]   In its Renewed Motion and Renewed Brief, Berkley demonstrates that it is entitled to judgment as a matter of law on SSS and the Plan's claims, as well as on its own counterclaim for indemnity under the Plan Document.[6]

On February 28, 2006, SSS and the Plan filed their Renewed Summary Judgment Response, together with Third-Party Plaintiffs' Brief in Support of Response to Third-Party Defendant Berkley's Renewed Motion for Summary Judgment ("Renewed Response Brief").[7] All of SSS and the Plan's arguments, authorities and evidentiary references are contained in their Renewed Response Brief.  In their Renewed Response Brief, SSS and the Plan do not contest to any noticeable degree the merit of Berkley's summary judgment arguments; instead, they seek to circumvent the dispositive force and effect of Berkley's Renewed Motion by disingenuously "rewriting" their pleadings so as to include unpleaded issues, claims and defenses[8] and by making unsubstantiated, conclusory allegations.

As more particularly set forth below, none of SSS or the Plan's claims for breach of fiduciary duty, negligence or breach of contract can withstand scrutiny.  This Court, therefore, should summarily enter judgment on all of SSS or the Plan's claims, as well as on Berkley's

---

[3] Docket No. 116.

[4] Docket No. 144.

[5] Docket No. 118.

[6] Terms defined in Berkley's Renewed Motion and Renewed Brief will not be redefined, but will have the same meanings ascribed to them in such Renewed Motion and Renewed Brief.

[7] Docket No. 206.

[8] On even date herewith, Berkley has filed its Renewed Motion To Strike Third-Party Plaintiffs' Summary Judgment Arguments And Evidence And Supporting Brief ("Renewed Strike Motion").  Berkley incorporates herein its entire Renewed Strike Motion (Docket No. 219).

counterclaim for indemnity under the Plan Document.

## II.
## ARGUMENTS AND AUTHORITIES

A.    **No Standing To Pursue Claims**

Based upon the testimony of former SSS employees, Berkley establishes in its Renewed

Brief that the Plan no longer exists and, hence, lacks the requisite standing to pursue its claims.

*See* Renewed Brief (Docket No. 182) at 22.  In its response, the Plan acknowledges its lack of

existence but cursorily asserts, without citing any factual evidence or legal authorities, that it

may nevertheless proceed with this litigation.  *See* Renewed Response Brief at 16.  Such a

cursory contention does not constitute competent summary judgment evidence sufficient to

preclude the entry of judgment.  *See Nuwer v. Marine Post-Acute Network*, 2003 WL

21213366*4 (5th Cir., Op. No. 00-60299, May 27, 2003) (explaining that "[u]nsubstantiated

assertions cannot defeat a motion for summary judgment").  As to the Plan, then, the summary

judgment record demonstrates that it lacks standing to pursue any of its claims.  Summary

judgment on all of the Plan's claims, therefore, is warranted.

A similar result should obtain with respect to SSS.  In its Renewed Brief, Berkley shows

through the testimony of a former SSS employee that SSS's continued existence is doubtful and,

consequently, SSS may lack standing to prosecute its claims.  *See* Renewed Brief at 22.  SSS, in

an attempt to carry its burden of establishing standing, notes that it holds a good standing

certificate ("Certificate") in Texas.  *See* Renewed Response Brief at 16.  The Certificate to which

SSS makes reference in its Renewed Response Brief is a 2003 Certificate.  *See* SSS's Response

Appendix (Docket No. 135) at 207.  That Certificate is almost three years old and, hence, does

nothing to demonstrate that SSS exists now and has standing at this time to pursue this litigation.

SSS's failure to establish its current existence is fatal to its effort to demonstrate standing and its

ability to prosecute its claims. As a matter of law, therefore, SSS is precluded from pursuing any

of its claims and summary judgment is appropriate on all of its causes of action.

**B.     No Breach of Duty**

In their Renewed Response Brief, SSS and the Plan admit that no complaint is being

raised with regard to Berkley's handling of the Twins' claims, rather their complaints involve

Berkley's handling of the stop-loss insurance. *See* Renewed Response Brief at 8.  Moreover, a

review of the Renewed Response Brief demonstrates that the only complaints being voiced

regarding  stop-loss  insurance  are  that  Berkley  allegedly  did  not  procure  Specific

Accommodation in conjunction with the Transamerica Policy, Berkley allegedly failed to advise

that the Transamerica Policy did not include Specific Accommodation and Berkley allegedly left

a gap in insurance coverage when the Transamerica Policy was procured.  *See* Renewed

Response Brief at 9-10 and 14.  None of these propositions have substance and, consequently,

none of the claims for breach of fiduciary duty, negligence or breach of contract advanced by

SSS or the Plan have merit because the vitality of all of these claims are all based upon the

existence of foregoing alleged breaches of duty.

As concerns Berkley's alleged failure to procure Specific Accommodation for the

Transamerica Policy, it is undisputed that Goodliffe, SSS and the Plan's insurance agent and

broker of record, and not Berkley, designed the stop-loss insurance coverage and set the

specifications for the Transamerica Policy to be solicited by Berkley.[9]  In setting the policy

specifications,  Goodliffe  specified  "aggregate"  accommodation,  but  not  Specific

Accommodation and, consequently, Berkley, consistent with Goodliffe's directions, did not

solicit quotes for policies providing for Specific Accommodation.[10]  Hence, the undisputed

---

[9] Sillito Depo. at 51:6 – 52:9, 56:12 – 58:1; 68:4-12; 75:12-24; 107:7-11; 108:10-18; Ex. 4; Supp. App. at 11-12, 15-17, 19, 22, 25-26, 30-37.

[10] Id.

summary judgment record demonstrates as a matter of law that Berkley could not have "failed" to request Specific Accommodation because it was never asked or otherwise required to do so.

Similarly, SSS and the Plan's companion contention that Berkley failed to disclose the lack of Specific Accommodation to them is likewise misplaced. The assertion is ill-founded in the first instance because Berkley could not fail to disclose a policy term that was never meant to exist in the first place. In addition, the summary judgment record establishes that SSS and the Plan had, or are charged as a matter of law through Goodliffe with, actual knowledge of the lack of Specific Accommodation and, consequently, any alleged failure to disclose by Berkley is of no moment. *See* Renewed Brief (Docket No. 182) at 10-11 and evidentiary references cited therein.

Finally, SSS and the Plan's assertion that Berkley allegedly left a gap in coverage when it procured the Transamerica Policy is misguided for at least two reasons. First, as set forth above, as well as in Berkley's Renewed Brief,[11] Goodliffe designed the applicable policy coverages and to the extent the coverage was inappropriate, fault lies not with Berkley, but with Goodliffe, SSS and the Plan's agent and coverage designer. Second, and perhaps more importantly, contrary to SSS and the Plan's assertion, the Transamerica Policy did not create a gap in coverage. It is undisputed that the Transamerica Policy was a 24/12 policy. *See* Excess Loss Schedule.[12] As such, the Transamerica Policy covered claims incurred during the 24 month period between February 1, 1997 and January 31, 1999 and for which reimbursement was sought during the twelve month period of February 1, 1998 to January 31, 1999. *See* Excess Loss Schedule.[13] Thus, Transamerica's coverage period of February 1, 1997 through January 31, 1999, coupled

---

[11] *See* Renewed Brief (Docket No. 182) at 7 and 10.

[12] Appendix (Docket No. 116) at 206.

[13] Appendix (Docket No. 116) at 206.

with the further undisputed fact that the prior Standard Policy also provided coverage from February 1, 1997 through January 31, 1998,[14] definitively demonstrates that no gap in coverage existed, as suggested by SSS and the Plan. Furthermore, since all of the Twins' claims were incurred between their births on December 31, 1997 and their hospital discharges on April 1, 1998, those claims are well within the referenced policy coverages, as opposed to some nonexistent gap in insurance coverage.

In short, the summary judgment record demonstrates that Berkley did not breach any of the alleged duties cited by SSS or the Plan. Since these alleged breaches of duty are the only bases upon which SSS and the Plan's fiduciary, negligence and contractual contentions are founded, all of SSS and the Plan's claims fail as a matter of law because no underlying breaches of duty exist to support them. Accordingly, summary judgment on all of SSS and the Plan's claims is warranted.

## C.    No Breach of Fiduciary Duty

In its Renewed Brief, Berkley establishes that the breach of fiduciary duty claim asserted by the Plan under ERISA is defective as a matter of law. *See* Renewed Brief at 3-11. More particularly, Berkley demonstrates in its Renewed Brief that it is entitled to a summary disposition of the Plan's fiduciary claim because Berkley was not an ERISA fiduciary and even if it was, the claim would still be barred because the applicable three year ERISA statute of limitations had expired. *See* Renewed Brief at 3-11 and 21-23. In its Renewed Response Brief, the Plan does not challenge Berkley's contentions. As a matter of law, therefore, Berkley's entitlement to judgment is established and should be summarily granted. Berkley also should be granted summary judgment on the Plan's fiduciary claim because as demonstrated above, the

---

[14] SSS's Response Appendix (Docket No. 135) at 222.

Plan lacks standing to prosecute the claim and no breach of duty has been shown with which to support a fiduciary cause of action. *See* Sections IIA and IIB, *supra*.

Rather than attempt to defend the Plan's fiduciary claim, SSS and the Plan disingenuously attempt to avoid the entry of summary judgment on the fiduciary allegations by deceptively contending that Berkley fails to adequately address a state law breach of fiduciary duty claim allegedly asserted by SSS in Third-Party Plaintiffs' First Amended Complaint ("Amended Complaint").[15] *See* Renewed Response Brief at 6. The contention is devoid of merit for at least four reasons.

First, as Berkley points out in excruciating detail in both its Renewed Brief (Docket No. 182) and its Renewed Strike Motion (Docket No. 219), SSS has not pleaded a fiduciary cause of action. *See* Renewed Brief at 12-13, Renewed Strike Motion at 4-5. As such, SSS's purported fiduciary claim is a nullity and does not preclude summary judgment.

Second, as shown above, SSS lacks standing to prosecute any of its claims because no evidence of its continued existence has been mustered. *See* Section IIA, *supra*. Summary judgment on any purported fiduciary claim, therefore, is mandated for this further reason, assuming, while still denying, that the claim is even before this Court.

Third, as also demonstrated above, no breach by Berkley that could sustain any fiduciary claim occurred and, hence, no viable fiduciary cause of action exists, assuming the matter is before the Court, which it is not. *See* Section IIB, *supra*.

Finally, assuming while still denying that any fiduciary claim by SSS is before the Court, the contention would still be fatally flawed because the summary judgment record does not support the notion that Berkley was SSS's agent, which is the sole basis for SSS's unpleaded fiduciary contention. It is axiomatic that independent contractors and agents are not one in the

---

[15] Docket No. 53.

same thing. Equally well settled is the notion that "[a]gency will not be presumed." *Happy Industrial Corporation v. American Specialties, Inc.*, 983 S.W.2d 844, 852 (Tex.App. – Corpus Christi 1998, pet. dism'd w.o.j.). *Accord Townsend v. University Hospital – University of Colorado*, 83 S.W.3d 913, 921 (Tex.App. – Texarkana 2002, pet. denied). Although both independent contractors and agents act on behalf of others, it is the principal's degree of control that distinguishes an independent contractor from an agent. In an independent contractor arrangement, the principal controls the end to be accomplished, while in an agency relationship, the principal controls not only the end to be accomplished, but the manner, means and details by which the task is completed. *See Gutierrez v. Deloitte & Touche*, 100 S.W.3d 261, 271 (Tex.App. – San Antonio 2002, pet. dism'd); *Townsend*, 83 S.W.3d at 921; *Happy Industrial*, 983 S.W.2d at 852. Thus, unless the principal directs the details of the work, an agency relationship is not established.

Here, the summary judgment record does not, as a matter of law, substantiate SSS's agency claim. Although Berkley did perform tasks on behalf of SSS, it did not do so as SSS's agent. As Sillito, Berkley's Marketing Executive, clearly and directly testified with respect to Berkley's stop-loss insurance efforts:

> Q:   You understood that you were acting on behalf of [SSS] in obtaining the proposals that you did?
> A:   Yes.
> Q:   Any you understood that you were serving as [SSS's] agent?
> A:   No.
> Q:   No, you were not?
> A:   No.
> Q:   You did not understand that to be the case?
> A:   No.

Sillito Depo. at 109:17- 110:6 (Supp. App. (Docket No. 144) at 27-28).

Consistent with Sillito's testimony that Berkley acted on behalf of SSS, but not as an agent, SSS argues in its Renewed Response Brief that Berkley performed its services

Page 8

independently of, and with little, if any involvement by, SSS. *See* Renewed Response Brief at 6-7. Assuming the veracity by SSS's contentions, these assertions conclusively negate a necessary element of any agency relationship between SSS and Berkley – SSS's controlling the means, methods and details of Berkley's work.

Thus, Sillito's testimony, as well as SSS's own allegations definitively demonstrate that its relationship with Berkley was that of a principal and independent contractor, rather than a principal and agent. As such, SSS's fiduciary claim necessarily fails, even though it is not even before this Court, because the agency foundation upon which it is built is not supported by the summary judgment record.

In sum, SSS's fiduciary claim should be summarily disregarded as an unpleaded nullity. Assuming, however, that consideration is given to the claim, it still would be devoid of merit because SSS lacks the requisite standing to pursue it and no evidence exists to support it.

## D.   No Viable Negligence Claims

In their Renewed Response Brief (Docket No. 206), SSS and the Plan argue that they have presented viable negligence claims involving Berkley's alleged failures to procure Specific Accommodation, advise them of the lack of Specific Accommodation in connection with the Transamerica Policy and avoid any gap in insurance coverage. *See* Renewed Response Brief at 9-13. For the two reasons discussed below, none of SSS or the Plan's negligence assertions have merit and, consequently, judgment should be summarily entered on these claims.

First, SSS and the Plan's negligence claims lack merit because they lack the requisite standing to pursue them. *See* Section IIA, *supra*; Renewed Brief at 21-22.

Second, SSS and the Plan's negligence claims are also untenable as a matter of law because the summary judgment evidence conclusively negates the occurrence of the alleged breaches that underlie these claims. *See* Section IIB, *supra*; Renewed Brief at 10 and 17.

In sum, for the foregoing reasons, SSS and the Plan's negligence claims are fatally deficient. Summary judgment on all such causes of action, therefore, is required.

## E.   No Viable Tolling Contention

In its Renewed Brief, Berkley establishes that SSS and the Plan's negligence claims are barred, as a matter of law, by the applicable two year statute of limitations. *See* Renewed Brief at 13-15. SSS and the Plan attempt to circumvent Berkley's limitations defense by arguing that limitations was tolled by operation of the doctrine of fraudulent concealment, as well as the discovery rule. SSS and the Plan's tolling propositions cannot save the day because they have not been pleaded and, hence, are a nullity that is not before this Court. *See* Amended Complaint (Docket No. 53). *See also* Renewed Strike Motion (Docket No. 219) at 5-6. These tolling contentions also are devoid of merit because no evidentiary support exists to sustain them.

In order to establish fraudulent concealment a party must demonstrate that the alleged wrongdoer acted with "a fixed purpose to conceal [a] wrong." *Placid Oil Co. v. Professional Geophysics, Inc.*, 932 F.2d 394, 399 (5th Cir. 1991), *quoting, Weaver v. Witt*, 561 S.W.2d 792, 793 (Tex. 1977). On the other hand, the discovery rule requires a showing that some matter was "inherently unknowable." *See S.V. v. R..V.*, 933 S.W.2d 1, 6 (Tex. 1996). To be inherently unknowable, an injury must be "unlikely to be discovered within the prescribed limitations period despite due diligence." *S.V.*, 933 S.W.2d at 7. Application of the foregoing legal tenants to the controversy at hand conclusively demonstrates that neither fraudulent concealment nor the applicability of the discovery rule can be sustained.

As concerns fraudulent concealment, the summary judgment record demonstrates that nothing existed for Berkley to conceal. Specifically, Berkley could not conceal the Transamerica Policy's lack of Specific Accommodation because it was never intended to be a part of that policy. *See* Section II(B), *supra;* Renewed Brief at 7-8, 10 and 17. Similarly, Berkley could not

Page 10

conceal any alleged gap in insurance coverage because no such gap existed. *See* Section IIB, *supra.* Thus, even assuming that fraudulent concealment is before this Court, which it is not, the contention fails as a matter of law because no evidence exists to support it.

Similarly, the summary judgment record cannot support the unpleaded discovery rule assertion. More particularly, the record shows that SSS, as a fiduciary to the Plan, had a duty to diligently assess the Plan's insurance coverage and, further, could have known of its own accord on February 3, 1998, when its CFO signed the application papers for the Transamerica Policy, that the policy would not include Specific Accommodation or create any coverage gaps. *See Schaefer v. Arkansas Medical Society,* 853 F.2d, 1487, 1491 (8th Cir. 1988); Sillito Depo. at Ex. 18 (Appendix at 289-91). Moreover, it is undisputed that after the Transamerica Policy was issued on July 22, 1998, SSS could have reviewed the policy, which as a fiduciary it was obligated to do, and determine that Specific Accommodation was not included and coverage gaps did not exist. Thus, the summary judgment record shows as a matter of law that whether Specific Accommodation was provided or gaps existed was not inherently unknowable. Since the inherently unknowable element of the discovery rule cannot be supported, the rule's applicability in this action is eliminated.

Thus, as the foregoing legal authorities and evidentiary materials demonstrate, neither fraudulent concealment, nor the discovery rule are applicable here or otherwise prevent the statute of limitations from running. As a matter of law, therefore, this Court should reject SSS's tolling contentions, if it decides to address these unpleaded matters.

**F.   Contractual Indemnity**

Berkley demonstrates in its renewed summary judgment papers that it is entitled to judgment as a matter of law on SSS's claim for contractual indemnity because, *inter alia,* the Administration Agreement pursuant to which Berkley provided claims related services and

agreed to indemnify SSS did not come into existence until after the transactions and occurrences involved in this controversy had transpired. *See* Renewed Brief at 14-15. In a thinly veiled attempt to avoid Berkley's summary judgment, SSS contends in its Renewed Response Brief that it has asserted, in addition to a claim for contractual indemnity, a cause of action for breach of contract. *See* Renewed Response Brief at 13-15. SSS's contention is untenable for at least three reasons.

First, as demonstrated in Berkley's Renewed Strike Motion (Docket No. 219), the alleged contractual claim should be disregarded and stricken from the record because no pleadings exist to support it. *See* Renewed Strike Motion (Docket No. 219) at 6-8. Second, SSS lacks the requisite standing to pursue the claim. *See* Section IIA, *supra*. Finally, even if the alleged contractual claim is considered, which it should not be, it still lacks merit as a matter of law because no evidence of any supporting breach exists. *See* Section IIB, *supra*.

In short, either because a contractual claim has not been pleaded, SSS lacks standing or the summary judgment record is devoid of any evidence of a viable contract or its breach, Berkley is entitled to summary judgment on SSS's alleged causes of action for contractual indemnity and breach of contract.

**G.   Berkley's Contractual Indemnity**

By way of its Renewed Brief, Berkley showed that it is entitled to contractual indemnity from SSS under the Plan Document. *See* Renewed Brief at 24-25. SSS attempts to avoid Berkley's indemnity claim by proferring various propositions regarding the scope of the referenced document. SSS's arguments should be of no moment because SSS should be deemed to have admitted Berkley's allegations and otherwise precluded itself from contesting Berkley's right to indemnity because its tardily and improperly filed "answer" to Berkley's Counterclaim should be stricken and disregarded. *See* Renewed Brief at 24-25. *See also* Berkley's Renewed

Motion to Strike Counterclaim Answer (Docket No. 218); Rule 7(a), Fed. R. Civ. P. (mandating that there "shall be a …reply to a counterclaim"); Rule 8(d), Fed. R. Civ. P. (providing that "[a]verments in a pleading to which a responsive pleading is required…are admitted when not denied in the responsive pleading").  Hence, SSS and the Plan's attempt to raise defenses to Berkley's indemnity claim are foreclosed by operation of applicable rules of civil procedure and, consequently, their belatedly asserted defenses must be disregarded and stricken, and summary judgment entered in Berkley's favor.[16]

## III.
## CONCLUSION AND PRAYER

For the reasons set forth above, as well as in Berkley's other summary judgment papers, Berkley is entitled to summary judgment on all of SSS and the Plan's claims, in addition to summary judgment on its own claim against SSS for contractual indemnity.

WHEREFORE, Berkley respectfully prays that it be awarded summary judgment on all of SSS and the Plan's claims and on its own claim for contractual indemnity, and for such further and other relief to which it may show itself justly entitled.

---

[16] Contrary to SSS and the Plan's bald agency assertion, Berkley can, as an independent contractor, seek to recover indemnity as a "representative," as opposed to an agent, as permitted under the Plan Document. *See* Plan Document at 39 (Appendix (Docket No. 116) at 70; *Hooks v. Carpeton Mills, Inc.*, 2005 WL 352650 *4 (Tex.App. – Fort Worth, December 22, 2005, app. dissm'd) (not designated for publication) (noting that independent contractors were "representatives" within their industry).

Respectfully submitted,

By: _____

Robert M. Candee
State Bar No. 03738500
Dean J. Siotos
State Bar No. 0793018

HENSLEE, FOWLER, HEPWORTH
& SCHWARTZ, L.L.P.
6688 North Central Expressway, Suite 850
Dallas, Texas 75206-3913
(214) 219-8833
(214) 219-8866 (Fax)

ATTORNEYS FOR THIRD-PARTY
DEFENDANT BERKLEY RISK
MANAGERS

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of March, 2006, a true and correct copy of the foregoing document was served on the following in accordance with the Federal Rules of Civil Procedure:

Richard E. Aubin
Vial, Hamilton, Koch & Knox, L.L.P.
1700 Pacific Avenue
Suite 2800
Dallas, Texas 75201-7388

Lisa Manziel
Manziel Law Offices
8330 Meadow Road, Suite 100
Dallas, Texas 75231

Andrew C. Whitaker
Andrew G. Jubinsky
Fiari Davenpoirt & Graves
3400 Bank of America Plaza
901 Main Street, LB 125
Dallas, TX 75202-3796

_____

Robert M. Candee